IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CR 105 MR WCM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| WARREN ROSSLYN NEWELL | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on two motions to suppress filed by Defendant, which Motions have been referred to the undersigned pursuant to 28 U.S.C. § 636. Docs 30 & 31. The Government has filed a response and a supplemental response. Docs. 35 & 37. Having carefully reviewed the evidence, arguments, and applicable authority, the undersigned respectfully recommends that the Motions be denied.

## I. Relevant Procedural Background

On October 1, 2019, a two-count Bill of Indictment was filed charging Defendant with violations of 21 U.S.C. § 841(a)(1). Doc. 1.[1]

On July 25, 2020, Defendant filed three motions to suppress. Docs. 30, 31, 32. The motion appearing as Document 30 seeks the suppression of

---

[1] A Superseding Indictment was filed on October 6, 2020. Doc. 45. During Defendant's arraignment on the Superseding Indictment, counsel confirmed that the Superseding Indictment did not affect the pending Motions to Suppress.

evidence obtained following a search of Defendant's home on August 23, 2018 pursuant to a search warrant ("August 2018 Warrant") issued by a state magistrate ("Motion 30"). The motion appearing as Document 31 seeks the suppression of evidence obtained following a search of Defendant's home on July 24, 2019 pursuant to a search warrant ("July 2019 Warrant") issued by a Superior Court Judge ("Motion 31"). The motion appearing as Document 32 seeks the suppression of evidence obtained following a warrantless search of a vehicle in which Defendant was a passenger on July 24, 2019 ("Motion 32").[2]

On August 14, 2020, the Government filed a unified response to all three Motions, Doc. 35, and thereafter filed a supplemental response with respect to Motion 31, which consisted of an affidavit from the North Carolina Superior Court Judge who issued the warrant at issue in that motion. Doc. 37.

On August 31, 2020, as it did not appear that Defendant had requested a hearing on any of the motions, the undersigned directed Defendant to file a notice stating whether he sought a hearing on any of the motions.

On September 3, 2020, Defendant filed a Request for Hearing which stated that Defendant "agrees with the government that the motions to suppress evidence derived from the executions of search warrants may be decided by examining the search warrants and the attached affidavits alleging

---

[2] The undersigned has issued a separate Memorandum and Recommendation regarding Motion 32.

2

probable cause." Doc. 39, p. 1. That is, Defendant did not seek a hearing on Motions 30 and 31.

## II. Legal Standards

As noted, Defendant did not request a hearing on Motions 30 and 31, and the undersigned agrees that an evidentiary hearing on these Motions is not required. See e.g., United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013) ("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.").

Accordingly, the undersigned has considered whether the information presented in the applications for the August 2018 Warrant and the July 2019 Warrant established probable cause to support the issuance of those instruments. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996) ("When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant.").

For probable cause to exist, there must be a "fair probability that contraband or evidence of a crime will be found in a particular place" based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); see also United States v. Mihelich, 334 Fed. Appx.

555, 556 (4th Cir. 2009) (unpubl.) ((citing <u>United States v. Lalor</u>, 996 F.2d 1578, 1582 (4th Cir.1993)).

## III. Analysis

### A. The August 2018 Warrant

#### 1. Information Provided in the Application

The application for the August 2018 Warrant ("August 2018 Application") was submitted by Detective M. Lolley of the Henderson County Sheriff's Office and sought permission for law enforcement to seize certain property, including key(s) for a 2006 Ford F150, weapons, and "[a]ny and all Controlled Substances…and related paraphernalia" located at 77 Albert Drive in Hendersonville, North Carolina (including in vehicles at that address). Doc. 35-1, p. 3.

In support of that request, the August 2018 Application stated that on August 23, 2018, Detective Lolley received a phone call from Cpl. Justus (also of the Henderson County Sheriff's Office) in reference to a possible stolen enclosed trailer that Cpl. Justus had located at 77 Albert Drive. Cpl. Justus advised that there had been several complaints from the community about traffic in and out of the house and concerned neighbors believed illegal activity may be happening there. Cpl. Justus stated that he and a deputy drove by the home and observed a tan/gold Ford F150 leaving the residence. They recognized the female driver as Bojana O'Riley. Cpl. Justus further stated that

4

as he was turning around to follow the truck, he also observed a white trailer sitting in the yard and a white male riding an orange Husqvarna riding lawn mower. Cpl. Justus and the deputy caught up to the truck and conducted a traffic stop during which Ms. O'Riley advised that the vehicle had come from a friend of hers but that she did not know to whom the truck belonged. Cpl. Justus checked with dispatch to see if the vehicle was stolen and was advised that it was not entered in the NCIC system as having been stolen. Ms. O'Riley was released from the traffic stop and proceeded to turn back toward Albert Drive. Doc. 35-1, p. 6.

Detective Lolley told Cpl. Justus that he (Detective Lolley) needed to speak with Ms. O'Riley about a case that involved a vehicle that was stolen and recovered, with her personal property being inside of the recovered vehicle. Detective Lolley therefore directed Cpl. Justus to return to Albert Drive and to contact Ms. O"Riley and to let her know that Detective Lolley would be coming to speak with her. Cpl. Justus did so and advised that Ms. O'Riley was again at Albert Drive and was willing to speak with Detective Lolley. Doc. 35-1, p. 6.

Cpl. Justus also stated that when he and another officer, Deputy Staggs, returned to Albert Drive, he observed a white Chevrolet truck pulling out of the driveway. Cpl. Justus stated that three individuals were in the Chevrolet

truck and that he called for any available units to attempt to locate the vehicle for identification purposes. Doc. 35-1, p. 7.

Detective Lolley thereafter arrived at 77 Albert Drive and began speaking with Ms. O'Riley about the other case. Apparently at the same time, Cpl. Justus ran the vehicle identification number on the white enclosed trailer sitting in the yard. Henderson County dispatch responded and informed Cpl. Justus that the trailer had been entered into NCIC by the Canton Police Department as being stolen. Cpl. Justus relayed this information to Detective Lolley who contacted the Canton Police Department and was told that the trailer had been stolen from their jurisdiction about a week ago and further that an orange Husqvarna riding lawn mower was inside the trailer when it was stolen. The description of the missing lawn mower matched the mower that had been seen in the yard at Albert Drive. A detective with the Canton Police Department also advised that "he" (presumably the owner) was missing an orange motorized weed eater that had been stolen from the same area as the trailer and the mower. Detective Lolley walked around the front of the Albert Drive house and saw a weed eater matching that description. Doc. 35-1, p. 7.

Detective Lolley then contacted a patrol deputy and asked him to speak with the registered owner of the Ford F150. Subsequently, a Mr. Summey advised that his truck had been stolen the previous Friday and that he had

reported the events to the Henderson County Sheriff's Office. Detective Lolley advised Mr. Summey that law enforcement would take possession of his truck and get it back to him as soon as they could. Mr. Summey also gave Detective Lolley permission to search his truck if necessary. Doc. 35-1, p. 7.

Detective Lolley and Cpl. Whitaker, who was apparently another law enforcement officer at the scene, searched the truck but did not locate the keys for that vehicle. Doc. 35-1, p. 7.

Several minutes later, another deputy, Deputy Lindsay, advised dispatch that he had located the white Chevrolet truck that had been seen leaving 77 Albert Drive. Between the time the truck had been seen leaving Albert Drive and the time it was located by Deputy Lindsay, a Marvin Lively had called the Sheriff's Office to report that his white 2003 Chevrolet Silverado truck had been stolen. Doc. 35-1, p. 8.

Deputy Lindsay conducted a traffic stop on the Chevrolet truck he was following. He found that it was occupied by one person. Deputy Lindsay was able to confirm that the truck was the same one Mr. Lively had reported as being stolen and that it was the same truck Cpl. Justus had observed leaving Albert Drive. Deputy Lindsay relayed the name and information for the person he had in custody (the driver of the Chevrolet truck) so that "Deputy Justus" (presumably Cpl. Justus) could verify that he had observed the same person, which Cpl. Justus did. Deputy Lindsay also located a small user amount of

methamphetamine on that person when he was searched prior to being transported for outstanding warrants related to larceny and narcotics related charges.  Doc. 35-1, p. 8.

The August 2018 Application also stated that Detectives had "knowledge that individuals use their vehicles to store and move illegal items such as controlled substances and stolen property" and that Detectives had "an extensive history with all subjects that have been located on the property as part of this investigation and know that all individuals have a history with illegal controlled substances and the use of same.  Detectives believe that illegal controlled substances may be located inside this home, along with stolen property such as vehicle keys, lawn equipment, etc."  Doc. 35-1, p. 4.  The Application also stated that Detectives had:

> received information through confidential informants that illegal firearms have been inside the home located at 77 Albert Dr.  Informants have also relayed that they have heard conversation between the homeowner, Warren Newell, and other people that frequent the home that there is possibly a stolen motorcycle inside one of the bedrooms of the home. These informants have also stated that Newell is known to keep various illegal controlled substances in the home and hide these substances in various places to avoid detection.

> Doc. 35-1, p. 8.

With respect to Defendant, the August 2018 Application provided:

8

> Detectives and Deputies on scene of 77 Albert Dr. were able to identify Warren Ross Newell as the primary resident of the home. During interviews related to the stolen items found at the house, Newell stated that he lived in the home, and the home was his. Detectives and Deputies with Henderson County have an extensive history with Newell. Newell has been recently released from prison for various narcotics and property crime related charges. Currently Newell is on federal probation as a condition of his release from prison. Detectives know that Newell is a known drug user and is known to commit larcenies and take in stolen property. Newell is also a convicted felon and is not permitted to possession [sic] firearms.

Doc. 35-1, p. 8.

In its Response, the Government states that during the execution of the August 2018 Warrant, detectives located clear baggies containing methamphetamine, 35 Buprenorphine pills (a Schedule III drug, commonly sold under the brand name Subutex), marijuana, suspected heroin, and a business card with the name "Warren Ross Newell" all of which were wrapped in a green bandana hidden in a heating vent in Defendant's bedroom. They also located three sets of digital scales. In another bedroom, they found a Harley-Davidson motorcycle that had been partially disassembled. Two of the VIN plates had been mutilated, but the VIN on the motor allowed the detectives to determine that the motorcycle had been stolen from Waynesville. The Government further states that Defendant later waived his Miranda rights, admitted to smoking methamphetamine, and said that the

9

methamphetamine found in his bedroom was his, but denied ownership of the other drugs. Doc. 35 at 6.

### 2. Discussion

Defendant argues that the information provided in the August 2018 Application was too conclusory to establish probable cause to support the warrant and therefore the evidence seized from 77 Albert Drive should be suppressed. In particular, Defendant asserts that the Application did not include "any specific description of any illegal activity taking place in the home," and that Detective Lolley failed to "even try to establish when the events supposedly described by the 'informants' took place, what 'illegal controlled substances' had been seen in the house, or where the informants heard a conversation (and whom the participants of that conversation were) that indicated the possibility that a stolen motorcycle was inside the house." Doc. 30, p. 4. Defendant further argues that "the application included explicit reputational gossip about Mr. Newell to try to bolster the argument that there must be something unlawful happening there." Id.

In response, the Government argues that the affidavit was "sufficiently detailed and thorough to establish probable cause," and that even if the affidavit was insufficient, the evidence would still be admissible under the good faith exception. See Doc. 35, pp. 6-7.

### a. Probable Cause

In the August 2018 Application, Detective Lolley asserted there was probable cause to believe execution of the warrant would yield evidence of the crimes of "possession of stolen property" and "possession of a stolen motor vehicle," Doc. 35-1, p. 3, and the undersigned agrees that the August 2018 Application established probable cause to believe that evidence of those crimes would be found on the property. The August 2018 Application explained that Defendant was the primary resident of 77 Albert Drive and included a detailed recitation of stolen property already found at that location. Whether the August 2019 Application provided sufficient information to support the issuance of a search warrant concerning evidence of drug-related crimes, however, is a closer question.

"The Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a 'general, exploratory rummaging.'" United States v. Olyede, 982 F.2d 133, 138 (4th Cir. 1992) (citing Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). "This requirement ensures that the search is confined in scope to particularly described evidence relating to a specific crime for which there is probable cause." Id. (citing Voss v. Bergsgaard, 774 F.2d 402, 404 (10th Cir.1985)); see also United States v. Nasher-Alneam, 399 F.Supp.3d 579, 597-88 (S.D. W.Va. 2019) ("the Fourth Amendment requires that a warrant identify

the specific crime(s) thought to have been committed." (citing <u>Oloyede</u>, 982 F.2d at 138; <u>United States v. Galpin</u>, 720 F.3d 436, 445 (2d Cir. 2013) ("First, a warrant must identify the specific offense for which the police have established probable cause"); <u>United States v. Castro</u>, 881 F.3d 961, 965 (6th Cir. 2018) ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime.")).

Drug-related offenses were not listed as the crimes at issue in the "name of crime" section on the first page of the August 2018 Application; that section referenced only the North Carolina crimes of possession of stolen property and possession of a stolen motor vehicle.  Doc. 35-1, p. 3.  <u>See</u> <u>United States v. Powers</u>, 1 F.Supp.3d 470, (M.D.N.C. Feb. 19, 2014) ("Facts related to one crime, drug possession, cannot justify a search warrant for evidence of the entirely different crime of drug trafficking.") (citing <u>United States v. Hodson</u>, 543 F.3d 286, 292 (6th Cir. 2008) (holding search warrant defective where affiant established probable cause for child molestation but obtained warrant for search of evidence of child pornography); <u>United States v. Doyle</u>, 650 F.3d 460, 472 (4th Cir. 2011) (holding information in affidavit concerning allegations of sexual assault did not support probable cause to search for child pornography) (citing <u>Hodson</u>, 543 F.3d at 292)).

The August 2018 Application did include some information concerning suspected drug activity. Specifically, it stated that, based on detectives' "extensive history" with the individuals located on the property, they knew "all individuals have a history with illegal controlled substances and the use of same" and therefore detectives believed "illegal controlled substances may be located inside this home…." Doc. 35-1, p. 4. Additionally, the Application stated that "informants have also stated that [Defendant] is known to keep various illegal controlled substances in the home and hide these substances in various placed to avoid detection," that he had "been recently released from prison for various narcotics and property crime related charges," and that detectives knew Defendant was "a known drug user…." Doc. 35-1, p. 8. Finally, the August 2018 Application provided that another individual leaving the property was found to be in possession of a "small user amount of Methamphetamine." Doc. 35-1, p. 8.

However, the August 2018 Application did not provide any additional detail regarding Defendant's "history with illegal controlled substances." Nor did it provide any further detail regarding the "informants," such as when the referenced conversations occurred or who was involved in those conversations.

"When the information forming the basis for probable cause comes from an informant, the informant's 'veracity' and 'reliability' are critical to the totality of the circumstances test." United States v. Lull, 824 F.3d 109, 118

(4th Cir. 2016) (citing <u>Wilhelm</u>, 80 F.3d at 119 (quoting <u>Gates</u>, 462 U.S. at 233, 103 S.Ct. 2317)).  While these are not the only factors to be considered, the Fourth Circuit has held that "a judicial officer's assessment of probable cause ... must include a review of the 'veracity' and 'basis of knowledge' of persons supplying hearsay information."  <u>United States v. Perez</u>, 393 F.3d 457, 461–62 (4th Cir. 2004) (emphasis added) (citations and internal quotation marks omitted).

The undersigned therefore concludes that the August 2018 Application failed to set forth sufficient probable cause to support a warrant seeking evidence of drug-related offenses.

### b.  The Good Faith Exception

In response to Defendant's argument that the warrant was based on a "conclusory" and "bare bones" affidavit and therefore that evidence seized from the property should be suppressed, Doc. 30, p. 4, the Government responds that even if it was deficient, the August 2018 Application was not so lacking in the indicia of probable cause as to render official belief in its existence unreasonable.  <u>See</u> Doc. 35, p. 7.

Even if a warrant is found to be defective, based on the absence of probable cause, evidence obtained from the execution of that warrant may nevertheless be admitted under the good faith exception to the exclusionary rule.  <u>United States v. Leon</u>, 468 U.S. 897, 922-23, 104 S.Ct. 3405, 82 L.Ed.2d

677 (1984). Specifically, "[e]vidence seized pursuant to a defective warrant will not be suppressed unless: (1) the affidavit contains knowing or reckless falsity; (2) the magistrate acts as a rubber stamp for the police; (3) the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; or (4) the warrant is so facially deficient that an officer could not reasonably rely on it." United States v. Jacobo-Mendoza, 133 Fed. Appx. 885, 886 (4th Cir. 2005) (unpubl.) (citing United States v. Wilhelm, 80 F.3d 116, 121-22 (4th Cir.1996); United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir.1995)).

"Typically, an officer's reliance on a magistrate's decision to issue a warrant will be deemed objectively reasonable." United States v. Thomas, 908 F.3d 68, 72 (4th Cir. 2018). "But as *Leon* makes clear, when a supporting affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' then an officer cannot be found to have reasonably relied on the resulting warrant, and suppression remains the appropriate remedy." Id. The Fourth Circuit has explained that "[t]his is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002).

The Fourth Circuit has held that "the good-faith exception to the exclusionary rule should not apply" when the warrant issued was based on a

"bare-bones" affidavit premised on information from an unknown and unproven informant provided without "meaningful corroboration." <u>United States v. Wilhelm</u>, 80 F.3d 116, 121 (4th Cir. 1996) (citing <u>United States v. Barrington</u>, 806 F.2d 529, 532 (5th Cir.1986) (good faith exception did not save a bare bones affidavit unsupported by probable cause where affidavit stated officer had "received information from a confidential information," known to him, who had "provided information in the past that…led to arrest and convictions.")); <u>see also</u> <u>id</u>. (citing <u>United States v. Laury</u>, 985 F.2d 1293, 1311 n. 23 (5th Cir.1993) (defining a "bare bones affidavit" as one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause")).

For purposes of the good faith exception, "law enforcement 'reports' as to a defendant's 'previous drug smuggling activities' can corroborate a confidential informant's 'veracity.'" <u>United States v. Bynum</u>, 293 F.3d 192, 197 (4th Cir. 2002) (finding good faith exception to exclusionary rule applied where affidavit included information regarding defendant's criminal record, that defendant resided at the proposed search site, and that a large amount of heroin and money had been seized from the site less than four months earlier) (quoting <u>United States v. Taylor</u>, 985 F.2d 3, 6 (1st Cir.1993) (citation omitted) & <u>United States v. Foree</u>, 43 F.3d 1572, 1576 (11th Cir.1995)).

16

Here, the August 2018 Application provided some information relevant to a search for drug-related evidence. In particular, it stated that detectives and deputies had an "extensive history" with Defendant, that Defendant had recently been released from prison for "various narcotics and property crime related charges," and that from an informant's statement, Defendant was "known to keep various illegal controlled substances in the home and hide these substances in various places to avoid detection." Doc. 35-1, pp. 4 & 8.

Additionally, the August 2018 Application stated that the individual who had been stopped after leaving Defendant's property in the allegedly-stolen white Chevrolet Silverado had a "user amount" of methamphetamine. This fact also provided some corroboration for the premise that illegal controlled substances would be found at the property. Accord United States v. McDowell, No. 5:10-cr-296-FL, 2011 WL 841086 (E.D.N.C. March 7, 2011) (finding probable cause existed to search defendant's residence, reasoning that a nexus between his residence and drugs was established through the uncontroversial inference that an individual discovered shortly after leaving his residence with narcotics might be storing illegal drugs at that location.).

Based on this information, the undersigned cannot say that the supporting affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Thomas, 908 F.3d at 72. The undersigned therefore concludes that the good faith exception to the

17

exclusionary rule applies and will recommend that the Motion to Suppress (Doc. 30) be denied.

### B. The July 2019 Warrant

#### 1. Information Provided in the Application

In the July 2019 warrant application, Doc. 35-2 (the "July 2019 Application"), Detective James Hurn of the Henderson County Sheriff's Office sought permission to search *inter alia*, 21 Hilda Lane in Mills River, North Carolina, Defendant, and a black 2005 Ford Mustang. Doc. 35-2, pp. 4-8. Detective Hurn stated in the July 2019 Application that there was probable cause to believe the property to be searched constituted or would contain evidence of various crimes related to the possession, manufacture, and keeping/selling of illegal controlled substances. Doc. 35-2, pp. 8-9.

The July 2019 Application provided that on July 24, 2019, detectives with the Henderson County Sheriff's Office were conducting surveillance on 21 Hilda Lane because "they had received information that Warren Rosslyn Newell was living at the residence and knew that Newell was wanted by the United States Marshals Service." Doc. 35-2, p. 12. While conducting visual surveillance, Detectives observed Defendant leave the residence and enter the passenger side of a red Nissan Sentra. Doc. 35-2, p. 13.

Detectives then initiated a traffic stop of the Nissan Sentra based on Defendant's outstanding arrest warrant.[3]  During the stop, a "K9 certified in the detection of controlled substances" alerted, and following a search of the vehicle, Detectives located "a clear glass pipe with burnt residue, a hypodermic needle loaded with an unknown substance, [and] approximately 12.9 grams of crystal-like substance."  Doc. 35-2, p. 13.  Additionally, detectives found a large sum of U.S. currency in Defendant's front right pants pocket and left cargo pocket.  Doc. 35-2, p. 13. The crystal-like substance was field-tested and "gave positive indication for the presence of methamphetamine."  Doc. 35-2, p. 13.

Defendant was then taken into custody on the outstanding arrest warrant.  He later told Detectives that he lived at 21 Hilda Lane with another individual, had access and control over the entire building, stored personal property  "in a room located to the left of his apartment entrance," and provided Detectives with the keys to access the building.  Doc. 35-2, p. 13.

Additionally, the July 2019 Application set forth that the driver of the Nissan Sentra, Mark Morgan, told detectives that Defendant

> had contacted him and NEWELL wanted Morgan to drive him around so NEWELL could collect money. Detectives know, based on training and experience, that individuals involved in the sale and distribution of controlled substance[s] often go and collect financial [sic] owed to them from their customer base.  Morgan

---

[3] Evidence obtained during that stop is the subject of Defendant's third motion to suppress (Motion 32).

also said that NEWELL loaded several bags inside the vehicle. These bags he had brought from inside 21 Hilda Lane to include the bag the 12.9 grams of suspected methamphetamine was located inside of.

Doc. 35-2, p. 13.

### 2. Discussion

Defendant argues that a discrepancy in the dates on the July 2019 Application indicates that the warrant was issued without appropriate review by the state court, and that the July 2019 Application failed to provide sufficient information to establish probable cause. The Government contends that any discrepancy regarding the dates has been sufficiently explained.

### a. Dates on the July 2019 Application

Defendant correctly points out that although the July 2019 Application is based on events that occurred on July 24, 2019, both the judicial officer who signed the July 2019 Application and the affiant, Detective Hurn, dated the July 2019 Application "July 23, 2019." Defendant argues that, consequently, "[i]t is unclear from the application whether the application was blank when presented or whether Officer Hurn included facts which he predicted that the investigation would uncover, through the 'specific probable cause' presented tracks very closely to events which unfolded very similarly to those predicted by Officer Hurn. In any event, the magistrate authorized the Henderson

County Sheriff's Department to search Mr. Newell's home based on evidence which would be uncovered later." Doc. 31, pp. 1-2.

In response, the Government explains that Detective Hurn "noted the mistake in the dates" in a report regarding the search warrant and confirmed that the correct date of the incident was July 24. Doc. 35, p. 13, n. 1. Further, in a supplement to its opposition, the Government filed an Affidavit of the Honorable Peter Knight, the North Carolina Superior Court Judge who signed the July 24, 2019 Warrant. Doc. 37-1. While Judge Knight has no specific recollection of the subject warrant, he explains that he follows the same procedure with respect to all search warrants, that he has "never issued a search warrant when [he] believed that the written application did not support a conclusion probable cause existed," and that he has "never issued a search warrant that did not provide any facts upon which [he] could make a determination as to probable cause." Doc. 37-1, p. 2. Judge Knight further states that he has "never issued a search warrant that was to be completed at a later time by the applicant, or any variation of such a practice." Doc. 37-1, p. 2. Additionally, Judge Knight states that upon review of the July 2019 Application, he is "confident that [he] incorrectly dated [his] signature on this search warrant '7-23-19,' and, taking into account [his] consistent practice with respect to search warrants, [he] believe[s] that [he] signed and issued this search warrant on July 24, 2019." Dc. 37-1, p. 2.

Defendant has not contested Judge Knight's affidavit, nor asked for a hearing on this Motion, and the undersigned finds that Judge Knight's affidavit sufficiently addresses the discrepancy in dates raised by Defendant.

### b. Probable Cause

Defendant also argues that the facts set forth in the July 2019 Application were insufficient to establish probable cause and therefore the evidence seized from 21 Hilda Lane should be suppressed. Defendant contends that the July 2019 Application improperly relied on a description of Defendant's "poor" reputation and that the only specific evidence of unlawful behavior presented in the July 2019 Application "was that officers found methamphetamine in a bag inside the car in which Mr. Newell was a passenger, both Mr. Newell and the driver denied ownership of the bag, and the driver attributed the bag to Mr. Newell." Doc. 31, p. 3. Further, Defendant argues that even if the issuing court believed that the methamphetamine found in the car was Defendant's, there was no attempt in the July 2019 Application to link the drugs in the car to any specific evidence that might be found in Defendant's home. Id. at p. 4.

The undersigned does not find this argument to be persuasive. The July 2019 Application provided that Defendant confirmed that he lived at 21 Hilda Lane and stored personal property there. Doc. 35-1, p. 13. Additionally, drugs and drug paraphernalia were found in the car in which Defendant was riding,

and a large amount on cash was found on Defendant's person.  Finally, the July 2019 Application provided that the driver, Mr. Morgan, informed officers that Defendant had loaded several bags into the vehicle which bags he had brought from inside 21 Hilda Lane, including the bag in which the 12.9 grams of suspected methamphetamine were located.  See United States v. Williams, 974 F.2d 480, 482 (4th Cir.1992) (per curium) ("The totality of facts presented to the magistrate were sufficient to establish a fair probability that drug paraphernalia would be found in [defendant's] room at the Statesman Motor Lodge.").

## IV.  Recommendation

The undersigned therefore **RECOMMENDS** that:

1. Defendant's Motion to Suppress seeking suppression of evidence obtained by the Government pursuant to the August 23, 2018 warrant (Doc. 30) be **DENIED.**

2. Defendant's Motion to Suppress seeking suppression of evidence obtained by the Government pursuant to the July 24, 2019 warrant (Doc. 31) be **DENIED**.

Signed: November 12, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).