IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CR 105 MR WCM

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| WARREN ROSSLYN NEWELL ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant's Motion to Suppress, which has been referred to the undersigned pursuant to 28 U.S.C. § 636. Doc. 32. The Government has filed a response, Doc. 35, and a hearing on the Motion has been conducted. Having carefully reviewed the evidence, arguments, and applicable authority, the undersigned respectfully recommends that the Motion be denied.

I.  Relevant Procedural Background

On October 1, 2019, a two-count Bill of Indictment was filed charging Defendant with violations of 21 U.S.C. § 841(a)(1). Doc. 1.[1]

On July 25, 2020, Defendant filed three motions to suppress. Docs. 30, 31, 32. The motion appearing as Document 30 seeks the suppression of

---

[1] A Superseding Indictment was filed on October 6, 2020. Doc. 45. During Defendant's arraignment on the Superseding Indictment, counsel confirmed that the Superseding Indictment did not affect the pending Motions to Suppress.

evidence obtained following a search of Defendant's home on August 23, 2018 pursuant to a search warrant issued by a state magistrate ("Motion 30"). The motion appearing as Document 31 seeks the suppression of evidence obtained following a search of Defendant's home on July 24, 2019 pursuant to a search warrant issued by a Superior Court Judge ("Motion 31"). The motion appearing as Document 32 seeks the suppression of evidence obtained following a warrantless search of a vehicle in which Defendant was a passenger on July 24, 2019 ("Motion 32").[2]

On August 14, 2020, the Government filed a unified response to all three Motions. Doc. 35, and thereafter filed a supplemental response with respect to Motion 31, which consisted of an affidavit from the North Carolina Superior Court Judge who issued the warrant at issue in that motion. Doc. 37.

On August 31, 2020, as it did not appear that Defendant had requested a hearing on any of the motions, the undersigned directed Defendant to file a notice stating whether he sought a hearing on any of the motions.

On September 3, 2020, Defendant filed a Request for Hearing which stated that Defendant "agrees with the government that the motions to suppress evidence derived from the executions of search warrants may be decided by examining the search warrants and the attached affidavits alleging

---

[2] The undersigned has issued a separate Memorandum and Recommendation regarding Motions 30 and 31.

probable cause." Doc. 39, p. 1. That is, Defendant did not seek a hearing on Motions 30 and 31. Defendant did, however, seek a hearing with respect to Motion 32. Id. In support of that request, Defendant stated that "there are disputed issues of fact regarding the circumstances of the search." Id.

The next day, the undersigned entered a text order granting Defendant's request for hearing on Motion 32.

On September 10, 2020, the Government filed an Opposition to Defendant's Request for Evidentiary Hearing. Doc. 40. In that filing, the Government asked the Court to reconsider its text Order setting a hearing and to resolve Motion 32 on the written filings. Further, the Government stated that it "does not contest the facts as alleged by the defendant in his motion to suppress, and therefore there are no disputed questions of fact as to which this Court must make findings in order to rule on the defendant's motion." Doc. 40 at 2.

On September 15, 2020, the Court held a telephonic hearing with counsel concerning the need for an evidentiary hearing on Motion 32. Defense counsel represented that he would be meeting with Defendant the following day, and would discuss the issue with Defendant, including a possible stipulation of facts relative to Motion 32. In order to allow defense counsel time to consult both with Defendant and with the Government regarding possible factual stipulations, and further to allow the Government time to confer with its

potential witnesses, the Court canceled the September 21, 2020 hearing on Motion 32 and indicated the issue of a hearing would to be addressed further following receipt of Defendant's supplemental filing.

On September 18, 2020, Defendant filed a (Continued) Request for Hearing. Doc. 42. In that document, Defendant renewed his request for a hearing on Motion 32 and explained:

> After consultation with Mr. Newell, counsel for Mr. Newell cannot concede all of the facts which the government argues were conceded by pleadings written by counsel for Mr. Newell without prior consultation with Mr. Newell. Counsel for Mr. Newell, aware of his obligation to raise only good-faith factual disputes, continues to believe that the facts surrounding the July 24, 2019, warrantless search of Mr. Newell's car provide sufficient support for the alleged unconstitutionality of the search. Therefore, Mr. Newell renews his request for a hearing on his motion.

Doc. 42, p. 1.

Considering the subject matter of Motion 32 and the state of the record, the Court concluded in its discretion that a hearing would aid in the consideration of Motion 32 and directed the Clerk to schedule a hearing. Doc. 43.

That hearing began on October 26, 2020. Assistant United States Attorney Richard Edwards appeared for the Government. Attorney Eric J. Foster appeared with Defendant. The hearing was recessed during Defendant's

presentation of evidence in order to secure the appearance of Henderson County Detective Robert Pace, a witness the Government had intended to call but who became unavailable unexpectedly due to a family matter. The hearing resumed on November 6, 2020.

At the conclusion of the hearing, the undersigned took Motion 32 under advisement.

## II. Evidence Presented and Factual Findings

At the hearing, the Government called two witnesses – Henderson County Sheriff's Department Detectives Josh Hopper and Justin Hoots. The Government also introduced, without objection, a dash cam video showing the vehicle stop, Defendant's arrest, and the search of the vehicle (Government's Exhibit 1). Additionally, the Government requested, without objection, that the Court take judicial notice of the July 18, 2019 Arrest Warrant for Defendant. See United States v. Warren Rosslyn Newell, No. 1:14-cr-22-MR-WCM-1, United States District Court, Western District of North Carolina, Doc. 105.

Defendant offered, without objection, an article entitled "Handler Beliefs Affect Scent Detection Dog Outcomes" that had been previously filed electronically. See Doc. 51-1. Defendant also called Henderson County Sheriff's Department Detective Robert Pace.

Based on the information of record and as presented during the hearing, the undersigned finds the factual background to be as follows:

On July 18, 2019, an Arrest Warrant was issued for Defendant. 1:14-cr-22, Doc. 105, p. 6. Detectives Hopper, Hoots, and Pace were aware of the Arrest Warrant prior to the subject stop on July 24, 2019.

On July 24, 2019, Detective Hopper was conducting surveillance on Defendant's house when he observed Defendant exit the house and get into the passenger side of a Red Nissan Sedan ("the "Vehicle"). Detective Hopper and Detective Pace, who was nearby in a separate police vehicle, followed the Vehicle and Detective Pace initiated a stop of the Vehicle. Detectives Hopper and Pace then approached the Vehicle; Detective Hopper on the passenger side and Detective Pace on the driver side.

Detective Hopper observed Defendant reach toward the passenger floorboard area of the Vehicle. Detective Hoots arrived at the scene shortly thereafter and joined Detective Hopper on the passenger side of the Vehicle. Detective Hopper had Defendant exit the Vehicle at which time Detective Hopper observed, in the passenger area, a glass pipe that appeared indicative of drug use. Defendant was advised of the outstanding warrant and arrested. Detective Hopper then searched Defendant's person and located approximately $31,000 in U.S. currency and brass knuckles.

While Detective Hopper was interacting with Defendant, Detective Pace was interacting with the driver of the Vehicle, Mark Morgan. After Defendant was removed from the Vehicle, Detective Pace had Mr. Morgan exit the Vehicle, and began talking to him. Mr. Morgan reported that the Vehicle's owner, Abby London, was at work and had allowed him to borrow the Vehicle. Mr. Morgan later stated that nothing in the Vehicle belonged to him.

Detective Hoots investigated the status of Mr. Morgan's driver's license and determined that although Mr. Morgan had a Washington State identification card, his North Carolina driver's license was permanently suspended. Detective Hoots was unable to confirm whether Mr. Morgan had Ms. London's permission to drive the Vehicle.

Detective Pace is a certified canine handler and had his detection dog, Ozzy, with him at the time of the stop. Less than ten minutes after the beginning of the stop, and very close to the time Detective Hoots determined that Mr. Morgan's license was suspended, Detective Pace conducted a "free air" walk around the Vehicle with Ozzy. The dog exhibited a "final alert" signal at the passenger side window by putting his front paws on the window then sitting and pointing his nose at the passenger door. Detective Pace observed

what he believed to be a glass pipe used for methamphetamine, with a chalky substance inside it, on the front passenger side floorboard.[3]

Detectives then searched the Vehicle. They located approximately 12.9 grams of methamphetamine that was contained in a bag in the interior of the Vehicle as well as the glass pipe and a glass vial.

Because Detective Hoots could not confirm that Mr. Morgan had permission from Ms. London to drive the Vehicle, and because Mr. Morgan did not have a valid driver's license, the Vehicle was ultimately towed.

Defendant does not contest the items found on his person but does seek the suppression of the evidence obtained from the search of the Vehicle.

## III. Analysis

Defendant contends that the July 24, 2019 traffic stop became unlawful because it was prolonged "beyond the time reasonably required to complete [the] mission" of the stop, Doc. 32, p. 3 (citing Illinois v. Caballes, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)), and because a "dog sniff around the vehicle's perimeter for the purpose of detecting narcotics 'is not an ordinary incident of a traffic stop.'" Id. (citing United States v. Bowman, 884 F.3d 200,

---

[3] Detective Pace testified that he recognized the glass pipe as a pipe for methamphetamine, describing the pipe as having a thin stem a few inches long and a glass bubble at the end.

210 (4th Cir. 2018) (quoting Rodriguez v. United States, 575 U.S. 348, 356, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015)).

During the hearing, Defendant raised a second argument—that there was a lack of probable cause to conduct the search of the Vehicle—and Defendant made an oral motion to amend his Motion to Suppress on this basis. Defendant's oral motion was taken under advisement and the parties were given the opportunity to present evidence and argument relevant to the question of probable cause during the hearing. The undersigned subsequently granted Defendant's oral motion.

Each of Defendant's arguments is addressed in turn.

### A. Was the Stop Unconstitutionally Prolonged?

Defendant contends that the "mission" of the stop ended with Defendant's arrest and that "any further seizure of Mr. Newell's car was unlawful" such that evidence uncovered subsequent to his arrest should be suppressed. Doc. 32, p. 4. In response, the Government argues that the cases relied upon by Defendant are inapposite, because Defendant was not subject to a traffic stop that was unreasonably prolonged and was instead arrested. See Doc. 35, p. 10. Under these circumstances, the Government argues there was no continued seizure of Defendant in order to execute the dog sniff.

In Rodriguez, the Supreme Court held that the police cannot extend an otherwise completed traffic stop, absent reasonable suspicion, in order to

9

conduct a dog sniff. 575 U.S. at 354. ("An officer ... may conduct certain unrelated checks during an otherwise lawful traffic stop, but "he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual"); see also Arizona v. Johnson, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."); Caballes, 543 U.S. at 407 ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). "Like a *Terry* stop," the Court explained, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop and attend to related safety concerns." Rodriguez, 575 U.S. at 354 (internal citations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Id.

Here, the evidence shows that law enforcement personnel stopped the Vehicle in order to execute the outstanding warrant for Defendant's arrest; the Vehicle was not stopped because of a suspected traffic violation.

10

Further, Defendant was under arrest at the time of the dog sniff. "Being under arrest differs in significant constitutional ways from undergoing a simple traffic stop." United States v. Fonville, 652 Fed. Appx. 383, 387 (6th Cir. 2016) (unpubl.) (citing Knowles v. Iowa, 525 U.S. 113, 117, 119, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)). Where an individual has been lawfully arrested, the constitutional concern that a relatively brief encounter, such as a routine traffic stop, will be unreasonably prolonged is not present. See United States v. Robinson, No. 5:08-cr-20, 2009 WL 3261709, at *3 (W.D.N.C. Oct. 10, 2009) ("Because Robinson had already been placed under arrest at the time of the dog sniff, the sniff subjected Robinson to no additional detention or delay that would make the seizure of his person constitutionally unreasonable."); Fonville, 652 Fed. Appx. 383, 387 ("Rodriguez focused on the short duration of a traffic stop as opposed to when someone is under arrest, and it is thus distinguishable. There is no such time limit on detention for a dog sniff following a lawful arrest. Fonville's detention argument is thus without merit."); United States v. Everett, 8:17-cr-4-T-23JSS, 2017 WL 2312903, at *10 (M.D. Fl. April 19, 2017) ("Once Defendant was arrested and placed into custody, Defendant was not free to leave. Accordingly, the Court rejects Defendant's contention that his detention was unlawfully extended.") (citing United States v. Nunez, No. CR–11–2217–TUC–DCB, 2012 WL 385499, at *3 (D. Ariz. Feb. 7, 2012) ("Because Defendant was lawfully arrested, the time

11

required to obtain the narcotics-detection dog is not at issue."); United States v. Valandra, No. CR 11–30010–RAL, 2011 WL 3439930, at *5 (D.S.D. June 9, 2011), *report and recommendation adopted*, No. CR 11–30010–RAL, 2011 WL 3439919 (D.S.D. Aug. 5, 2011) ("Because [defendant] had already been placed under arrest at the time of [the canine's] sniff, the sniff subjected [defendant] to no additional detention or delay that would make the seizure of his person or vehicle constitutionally unreasonable")).

In addition, the evidence shows that the stop of the Vehicle itself was not unnecessarily prolonged. Although Defendant suggested during the hearing that the officers should have simply "left" Mr. Morgan and the Vehicle after Defendant was arrested, at that point in the encounter the officers had not been able to determine whether Mr. Morgan had permission to drive the Vehicle or the status of Mr. Morgan's driver's license.

### B. Was There Probable Cause to Search the Vehicle?

Defendant also argues that there was not probable cause to conduct a warrantless search of the Vehicle. The Government contends that probable cause existed because Detective Hopper and Detective Pace observed a glass pipe on the front passenger floorboard in plain sight and because there was a positive canine alert on the Vehicle.

### 1. The Glass Pipe

"The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment." Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); U.S. v. Jackson, 131 F.3d 1105, 1108 (4th Cir. 1997) ("Viewing an article that is already in plain view does not involve an invasion of privacy and, consequently, does not constitute a search implicating the Fourth Amendment."). An officer who inadvertently comes across an incriminating object when the officer has a "legitimate reason for being present unconnected with a search directed against the accused," may seize the evidence without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The plain view doctrine applies when: "(1) the seizing officer [is] lawfully present at the place from which he can plainly view the evidence; (2) the officer has a lawful right of access to the object itself; and (3) it is immediately apparent that the item seized is incriminating on its face." United States v. Williams, 41 F.3d 192, 196 (4th Cir. 1994); Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The incriminating nature of an item is "immediately apparent" if an officer has "'probable cause to associate the property with criminal activity.'" Texas v. Brown, 460 U.S. 730, 741-42,

13

103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (quoting Payton v. New York, 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).

"Courts have frequently applied the 'plain view' doctrine to evidence inside of an automobile." United States v. Brown, No. 2020 WL 6018897, at * 3 (W.D. Va. Oct. 11, 2020) (citing Brown, 460 U.S. at 745 (upholding seizure of a party balloon containing heroin that officer observed in driver's hand, where officer also saw plastic vials, white powder, and an open bag of party balloons in the vehicle); United States v. Hall, 397 Fed. Appx. 860, 862 (4th Cir. 2010) (unpublished) (holding officer conducted a valid plain view seizure of marijuana visible on the vehicle's floor board); United States v. Chulengarian, 538 F.2d 553, 554 (4th Cir. 1976) (officer looked through open car door and seized open brown bag containing what appeared to be marijuana, along with marijuana cigarette, and smoking pipe); United States v. Johnson, 599 F.3d 339, 347 (4th Cir. 2010) (gelcaps in plain view in a vehicle nearly identical to gelcaps containing heroin found on defendant's person)).

Here, both Detective Hopper and Detective Pace observed the glass pipe on the front passenger side floorboard. Detective Hopper saw the pipe when he approached the Vehicle to arrest Defendant. Detective Pace saw the pipe while standing outside of the Vehicle with Ozzy. Also, both Detectives testified that they believed the pipe to be of the type used for methamphetamine, and Detective Pace explained that the pipe appeared to contain a chalky residue.

14

Thus, the incriminating nature of the pipe was immediately apparent and provided probable cause to search the Vehicle. See Hall, 397 Fed. Appx. at 862 (discovery of the marijuana in plain view gave police probable cause to conduct the search of the vehicle that ultimately led to the firearm's discovery.); U.S. v. Spoerke, 568 F.3d 1236, 1249 (11th Cir. 2009) (finding probable cause for a warrantless search when the officer observed a pipe bomb in plain view in the vehicle); United States v. LaFountain, 252 F.Supp.2d 883, 889 (D.N.D.2003) (crack pipe in plain view established probable cause to search remainder of vehicle); United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir. 2000) (officers' observation of "an item commonly used in the manufacture of methamphetamine ... in plain view in the back seat" of a vehicle gave officers probable cause to search the vehicle for further contraband or evidence); United States v. Munoz, No. 4:08CR3069, 2008 WL 5069822, at *4 (D. Neb. Nov. 21, 2008) aff'd, 590 F.3d 916 (8th Cir. 2010) ("The discovery of drug paraphernalia (even without any drug residue) provides probable cause to search the entire automobile in which the paraphernalia were found for the presence of controlled substances.").

### 2. The Dog Sniff

"Having a trained dog sniff the perimeter of a vehicle that has been lawfully stopped in a public space is not a search for purposes of Fourth Amendment analysis." United States v. Jenkins, No. 2:18-cr-30, 2019 WL

2283921, at * 2 (N.D. W.Va. May 29, 2019) (citing United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). Further, a positive alert by a trained canine constitutes probable cause for a search. U.S. v. Jeffries, 22 F.3d 554, 557 (4th Cir. 1994) ("Having the trained dog sniff the perimeter of Jeffus' vehicle, which had been lawfully stopped in a public place, did not of itself constitute a search. When the dog 'alerted positive' for the presence of drugs, the officer was given probable cause for the search that followed.") (citing United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983)); see also U.S. v. Brooks, 376 Fed. Appx. 300, 2010 WL 1767449, at * 1 (unpubl.) (same).

Each of these circumstances—the Detectives' observation of the pipe in plain view and the positive canine alert—provided probable cause for a search of the Vehicle.

### IV. Recommendation

The undersigned therefore **RECOMMENDS** that Defendant's Motion to Suppress (Doc. 32) be denied.

Signed: November 12, 2020

W. Carleton Metcalf
United States Magistrate Judge

16

Case 1:19-cr-00105-MR-WCM   Document 56   Filed 11/12/20   Page 16 of 17

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).