THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:19-cr-00105-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| )             | |
| Plaintiff,    ) | |
| )             | |
| vs.                         ) | **ORDER** |
| )             | |
| )             | |
| WARREN ROSSLYN NEWELL,      ) | |
| )             | |
| Defendant.   ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Suppress and Memorandum in Support [Doc. 32]; the Magistrate Judge's Memorandum and Recommendation [Doc. 56], recommending that the motion be denied; and the Defendant's Objections to the Recommendation of the Magistrate Judge [Doc. 58].

## I.     PROCEDURAL HISTORY

On October 1, 2019, the Defendant was charged with two counts of Possession of Methamphetamine, a Controlled Substance, with the Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1). [Doc. 1].[1] On July 25, 2020,

---

[1] A Superseding Bill of Indictment was filed on October 6, 2020, which added an additional count of Possession with the Intent to Distribute. [Doc. 45]. The Superseding Indictment does not affect the pending Motions to Suppress. [Doc. 56 at 1 n.1].

the Defendant filed three Motions to Suppress. [Docs. 30; 31; 32]. The Motion docketed as Document 32 ("Motion 32") seeks the suppression of evidence obtained from a search of a vehicle after the Defendant was arrested on July 24, 2019.[2] The Government filed a unified response to all three motions on August 14, 2020. [Doc. 35].

On October 26, 2020, the Honorable W. Carleton Metcalf, United States Magistrate Judge, conducted an evidentiary hearing on the motion to suppress. Due to unexpected circumstances, the hearing was recessed and concluded on November 6, 2020. [Doc. 56 at 4–5]. At the hearing, three Henderson County Sheriff's Department Detectives testified. The Government introduced the Defendant's arrest warrant and the dashcam video of the Defendant's arrest. [Id. at 5]. The Defendant offered an article entitled "Handler Beliefs Affect Scent Detection Dog Outcomes." [Doc. 51-1]. On November 12, 2020, the Magistrate Judge issued a Memorandum and Recommendation, recommending that the motion to suppress be denied. [Doc. 56]. The Defendant timely filed Objections to the Memorandum and Recommendation ("Objections") on November 30, 2020. [Doc. 58].

---

[2] The Magistrate Judge issued a separate Memorandum and Recommendation regarding the first and second motions ("Motions 30 and 31"), and the Court will issue a separate Order regarding those Motions.

In his Objections, the Defendant argues that the Memorandum and Recommendation should be rejected for three reasons. First, he argues that the Magistrate Judge made erroneous factual findings and omitted other findings. Second, he argues that the Magistrate Judge erred in concluding that the officers did not unreasonably prolong the stop. Finally, he argues that the Magistrate Judge erred in concluding that the officers had probable cause to search the vehicle. The Defendant's Motion 32 and Objections to Recommendation are now ripe for the Court's consideration.

## II. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation. Fed. R. Crim. P. 59(b)(1). The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). Merely reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant *de novo* review. Id.; Veney v. Astrue, 539 F. Supp. 2d 841, 846 (W.D.

Va. 2008). The Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

## III. OBJECTIONS TO PROPOSED FACTUAL FINDINGS

The detailed factual background of this case is straightforward as set forth in the Memorandum and Recommendation. Therefore, it will not be reproduced here. The Defendant raises certain objections to the Magistrate Judge's findings of facts, which will be addressed below.

### A. Surveillance Prior to Execution of the Arrest Warrant

The Defendant objects to the Magistrate Judge's omission of any discussion regarding the government's surveillance of the Defendant prior to executing the arrest warrant. The Defendant argues that there is a discrepancy in the testimony of each of the Detectives regarding how long the Detectives surveilled the house. [Doc. 58 at 1]. He argues that resolution of this issue is necessary to the conclusion that the Defendant was stopped in order to carry out an arrest warrant. [Id. at 1–2].

The Court has reviewed the transcripts of the suppression hearing, including the testimony of Detective Hopper, Detective Pace, and Detective Hoots (the "Detectives"). The Detectives each testified that they were aware

4

Case 1:19-cr-00105-MR-WCM   Document 67   Filed 02/01/21   Page 4 of 14

of the arrest warrant for the Defendant prior to the stop and arrest of the Defendant on July 24, 2019. Defendant argues that each "testified a little differently." [Doc. 5 at 1]. Defendant, however, does not identify any relevance in the "discrepancy" that he points to regarding when the surveillance began. The officers waited for a clear opportunity to effectuate the arrest. There is no dispute that when they observed the Defendant exit the residence, enter a vehicle, and leave, the officers moved to serve the arrest warrant. Therefore, the Court finds that the Defendant's objection to this finding of fact is meritless.

### B. Discovery of the Pipe

The Defendant also objects to the Magistrate Judge's proposed finding that Detective Hopper observed the glass pipe while removing the Defendant from the car. The Defendant argues that the dashcam evidence does not support the conclusion that Detective Hopper saw the pipe when removing the Defendant from the car. [Doc. 58 at 2]. In the dashcam footage, Detective Hopper can be seen photographing the car. Detective Pace asked Detective Hopper if he had photographed the pipe that Detective Pace stated he saw "in plain view" when he walked his drug detection dog around the car. After this conversation, Detective Hopper returned to the vehicle and photographed the passenger side.

5

It is undisputed that Detective Pace saw the glass pipe when he led his dog around the vehicle. That observation of the pipe in plain view preceded and supported the subsequent search of the vehicle. Whether Detective Hopper *also* had observed the pipe in plain view is therefore immaterial. Moreover, the fact that Detective Pace suggested that Detective Hopper photograph the pipe does not refute Detective Hopper's testimony that he had previously observed the pipe.[3] As such, the Defendant's objection to this proposed finding is without merit and is overruled.

### C. The "Final Alert" by the Drug Detection Dog

The Defendant objects to the Magistrate Judge's finding that Ozzy, the drug detection dog, exhibited a "final alert" signal at the passenger side window. The Magistrate Judge proposed a finding that the drug detection dog gave his final alert signal when he put his front paws on the passenger window then sat and pointed his nose at the passenger door. [Doc. 56 at 7]. The Defendant argues that the Magistrate Judge erred by proposing that the Court find that this was a final alert. The Defendant also argues that the Magistrate Judge erred by omitting evidence regarding Detective Pace's behavior before the search.

---

[3] This is particularly so, considering that Detective Pace's suggestion came a mere one minute and twenty-five seconds after Detective Hopper began his photography.

6

Case 1:19-cr-00105-MR-WCM   Document 67   Filed 02/01/21   Page 6 of 14

A drug detection dog is trained to sniff for a particular odor.[4] The dog is trained to give a particular trained alert when it is as close as possible to the source of the odor. An "alert" refers "to the specific behavior a dog is trained to do when he encounters the source of the odor he is trained to detect." United States v. Wilson, 995 F. Supp. 2d 455, 473–74 (W.D.N.C. 2014) (describing a dog trained to "sit and stare").

The Court has reviewed the dashcam footage and transcripts of the suppression hearing. At the suppression hearing, Detective Pace, Ozzy's handler, gave detailed information about Ozzy's training. Detective Pace testified that Ozzy was trained to perform one of three behaviors as a final alert depending on the location of the odor. If the odor is at ground level, then Ozzy will lie down. If the odor is at waist level, then Ozzy will sit. If the odor is higher up, then Ozzy may stand or otherwise attempt to get as close as possible to the source. Ozzy is trained to get as close as possible to the source of the odor before stopping and staring at the source, pointing his nose at it.[5] The Defendant's argument that Ozzy was trained to alert only

---

[4] "A detection dog recognizes an odor, not a drug, and should alert whenever the scent is present, even if the substance is gone (just as a police officer's much inferior nose detects the odor of marijuana for some time after a joint has been smoked)." Florida v. Harris, 568 U.S. 237, 246 n.2 (2013).

[5] The Defendant argues that the Magistrate Judge incorrectly omitted testimony from Detective Pace regarding other behaviors that Ozzy might exhibit other than a final alert.

7

Case 1:19-cr-00105-MR-WCM   Document 67   Filed 02/01/21   Page 7 of 14

lying on the ground is not supported by the testimony. The dashcam footage shows Ozzy making a final alert by sitting and looking at the passenger side of the car after first attempting to get in the car. What is observed of the dog's behavior on the dashcam video is consistent with Detective Pace's testimony.

The Defendant also objects to the omission of a factual finding that Detective Pace said he was going to go "find some drugs" before the search. [Doc. 58 at 4]. The Defendant argues that this statement, along with the article the Defendant introduced into evidence, is relevant to whether the alert gave the Detectives probable cause to search the car. The Defendant introduced an academic study that addressed the issue of whether a dog handler's belief that a scent was present could impact the dog's interest in that location particular location.[6] [Doc. 51-1].

"[A] court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search" if the dog has been

---

This is not a case in which the handler is merely guessing about what the dog does or is pointing to a mere change in behavior. Ozzy performed his final trained alert in this case, and the fact that Detective Pace noticed other behaviors is irrelevant to the determination that Ozzy gave a final alert. Wilson, 995 F. Supp. at 475 (holding the "court cannot accept a handler's subjective determination that a dog has made some otherwise undetectable alert, which conclusion would be, for all practical purposes, immune from review").

[6] Lisa Lit et al., Handler Beliefs Affect Scent Detection Dog Outcomes, 14 ANIMAL COGNITION 387, 388 (2011).

certified by a bona fide organization. Florida v. Harris, 568 U.S. 237, 246–47 (2013). The dashcam video clearly shows that the dog alerted in the manner his handler testified he was trained to do. The fact that the handler may have cued the dog to initiate his sniff is not evidence that the handler cued the dog to alert, or more particularly *where* to alert. The study submitted by the Defendant addresses the situation where a drug dog may actually alert to some cue reflecting his handler's expectations rather than an actual odor. There is no evidence before the Court, however, to support such a finding here. Detective Pace's statement was made earlier in the process and at a different location from the dog's alert. The Defendant had the opportunity to cross-examine Detective Pace about this but did not do so. He did not ask about Detective Pace's routine for initiating a sniff, or about his actions immediately before the dog's alert. There is nothing apparent on the dashcam video to indicate that the dog alerted to Detective Pace's earlier cue rather than the methamphetamine.

The testimony of Detective Pace and the video evidence presented at the suppression reveal that the Magistrate Judge's characterization of the dog's alert is correct. The Magistrate Judge did not err by failing to include more findings about Detective Pace's behavior before the search or by failing

to address the article because this information was not relevant. The Defendant's objection to this factual finding is meritless.

Having overruled the Defendant's objections to the Magistrate Judge's factual findings, and upon careful examination of the entire record in this case, the Court finds that the Magistrate Judge's findings of fact as set forth in pages 5 through 8 of the Memorandum and Recommendation are correct and deserving of adoption by this Court. These findings are therefore adopted and incorporated herein

## IV. OBJECTIONS TO PROPOSED LEGAL CONCLUSIONS

The Defendant makes two objections to the Magistrate Judge's proposed legal conclusions. First, the Defendant argues that, in concluding that the traffic was not unduly prolonged, the Magistrate Judge erred in "disregard[ing] the Supreme Court precedent contained in <u>Rodriguez v. United States</u>, 575 U.S. 348 [(2015)]." [Doc. 58 at 5]. Second, the Defendant objects to the Magistrate Judge's proposed legal conclusion that there was probable cause to search the vehicle. The Court will address each of these objections in turn.

### A. The Duration of the Stop

In his first objection, the Defendant argues that the Detectives unlawfully prolonged the traffic stop by conducting the dog sniff after the

10

Defendant was removed from the car and handcuffed. In so arguing, the Defendant cites the Supreme Court's decision in Rodriguez, in which the Court held that "[a] seizure justified only by a police-observed traffic violation . . . 'becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission' of issuing a ticket for the violation." Rodriguez, at 575 U.S. at 350–51 (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)).

Here, however, the Detectives were not conducting a stop based upon a "police-observed traffic violation"; they were conducting a traffic stop in order to serve an arrest warrant. As the Sixth Circuit stated in United States v. Fonville, "Rodriguez focused on the short duration of a traffic stop as opposed to when someone is under arrest, and it is thus distinguishable. There is no such time limit on detention for a dog sniff following a lawful arrest." 652 F. App'x 383, 387 (6th Cir. 2016); see also United States v. Jones, 717 F. App'x 614, 615 (7th Cir. 2017) ("It would be pointless to argue that the police violated the Fourth Amendment, for [the defendant] was under lawful arrest before the canine sniff (for driving with a suspended license), and the sniff occurred swiftly after his arrest."); United States v. Zabokrtsky, No. 5:19-cr-40089-HLT, 2020 WL 1082583, at *15 (D. Kan. Mar. 6, 2020) ("[B]ecause Defendant was under lawful arrest at [the] time [of the sniff], his detention at the scene to conduct the sniff was reasonable and law

11

enforcement did not unlawfully extend the stop."); United States v. Everett, 8:17-cr-4-T-23JSS, 2017 WL 2312903, at *10 (M.D. Fl. April 19, 2017) ("Once Defendant was arrested and placed into custody, Defendant was not free to leave. Accordingly, the Court rejects Defendant's contention that his detention was unlawfully extended.") (citations omitted); United States v. Robinson, No. 5:08-cr-00020, 2009 WL 3261709, at *3 (W.D.N.C. Oct. 10, 2009) ("Because [the defendant] had already been placed under arrest at the time of the dog sniff, the sniff subjected [the defendant] to no additional detention or delay that would make the seizure of his person constitutionally unreasonable."). Here, the Defendant was lawfully under arrest pursuant to a valid arrest warrant, and thus his detention was not unlawfully extended by the dog sniff.

To the extent that the Defendant argues that the dog sniff unreasonably prolonged the detention *of the vehicle*, this argument is also without merit. Shortly after the Defendant was placed under arrest and taken into custody, the Detectives discovered that the driver of the vehicle did not have a valid driver's license. Thus, the vehicle either needed to be picked up by a licensed driver or be towed; the vehicle was not going anywhere for the immediate future. Detective Pace was already on the scene with his drug dog, so there was no delay in waiting for the drug dog to arrive to conduct

12

the sniff. In short, the dog sniff prolonged nothing. The Defendant's objections to the Magistrate Judge's proposed legal conclusions in this regard are overruled.

### B. Probable Cause to Search the Vehicle

The Defendant objects to the Magistrate Judge's proposed legal conclusion that there was probable cause to search the vehicle based on the drug paraphernalia observed in plain view and the positive canine alert. Based upon the findings of fact recommended by the Magistrate Judge, and those facts as found herein from the dashcam video and other evidence presented, the Court concludes that the Magistrate Judge's proposed conclusions of law as set forth in the Memorandum and Recommendation are correct. For these reasons, the Defendant's objections are to the Magistrate Judge's proposed legal conclusions are also overruled.

## VI. CONCLUSION

Upon conducting a *de novo* review of the Memorandum and Recommendation, the Court finds that the Magistrate Judge's proposed findings of fact are correct and that the proposed conclusions of law are consistent with current case law. Accordingly, the Court hereby overrules the Defendant's Objections and accepts the Magistrate Judge's recommendation that the Defendant's Motion to Suppress should be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED**, the Defendant's Objections to the Recommendation [Doc. 58] are **OVERRULED**, and the Magistrate Judge's Memorandum and Recommendation [Doc. 56] is **ACCEPTED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Suppress [Docs. 32] is **DENIED**.

**IT IS SO ORDERED**.

Signed: February 1, 2021

Martin Reidinger
Chief United States District Judge